UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND AND ARTHUR H. BUNTE, JR.<br><br>    PLAINTIFFS,<br><br>v.<br><br>BULK TRANSPORT, CORP.,<br><br>    DEFENDANT. | No. 13 C 9112<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Defendant/counter-plaintiff Bulk Transport Corporation has filed a counterclaim against plaintiffs/counter-defendants Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, one of the Fund's trustees (collectively, the "Pension Fund"), seeking declaratory and injunctive relief to prevent the Pension Fund from enforcing its rules governing arbitration of pension withdrawal liability. *See* R. 8. Bulk Transport has filed a motion for a preliminary injunction, R. 10, which the parties agree should be consolidated with the merits of Bulk Transport's counterclaim. *See* R. 20 at 11; R. 22 at 1; *see also* Fed. R. Civ. P. 65(a)(2) ("Consolidating the Hearing with the Trial on the Merits"). For the following reasons, the Court grants the parties' agreed motion to consolidate the preliminary-injunction motion with the merits of Bulk Transport's counterclaim, and denies Bulk Transport's motion for injunctive and declaratory relief.

## BACKGROUND

The Pension Fund is a multiemployer pension plan under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendment Act ("MPPAA"). *See* R. 17 ¶ 1; *see also* 29 U.S.C. §§ 1002(37) and 1301(a)(3). The MPPAA imposes "withdrawal liability" on employers who withdraw, partially or completely, from an underfunded multiemployer pension fund. *See* 29 U.S.C. §§ 1381-1405.[1] The purpose of the MPPAA's withdrawal liability provisions "'is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" *See Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 806 (7th Cir. 1999) (quoting H.R. Rep. No. 96–869). After receiving notification from the plan sponsor demanding payment of withdrawal liability, an employer has 90 days to ask the plan sponsor to review the decision. *See* 29 U.S.C. § 1399(b)(2)(A). "After a reasonable review of any matter raised," the plan sponsor must notify the employer of its decision and the basis for it. *See id.* at § 1399(b)(2)(B). The employer then has 60 days to initiate mandatory arbitration. *See id.* at § 1401(a)(1)(A). If the employer fails to initiate arbitration within that time

---

[1] A "complete withdrawal" occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). A "partial withdrawal" occurs "on the last day of a plan year if for such plan year—(1) there is a 70-percent contribution decline, or (2) there is a partial cessation of the employer's contribution obligation." 29 U.S.C. § 1385(a).

period, the withdrawal liability demanded by the plan sponsor becomes "due and owing." *See id.* at § 1401(b)(2).

On May 17, 2013, Bulk Transport received from the Pension Fund a demand for: (1) $86,687.75 for an alleged partial withdrawal during plan year 2011; and (2) $237,768.18 for an alleged complete withdrawal during plan year 2012. *See* R. 17 ¶¶ 14-15. On or about August 13, 2013, Bulk Transport submitted a timely request for review to the Pension Fund. *See id.* at ¶¶ 16-17. On or about December 6, 2013, the Pension Fund rejected Bulk Transport's challenge with respect to both plan years. *See id.* at ¶¶ 18-19.

On December 20, 2013, the Pension Fund filed this lawsuit seeking a declaratory judgment that Bulk Transport is not entitled to a refund with respect to certain pension contributions. R. 1. Bulk Transport filed its three-count counterclaim in this Court within the 60-day period to initiate arbitration. *See* R. 8. Bulk Transport's preliminary injunction motion is predicated on Count I of its counterclaim, which seeks declaratory and injunctive relief prohibiting the Pension Fund from enforcing its rules governing arbitration. *Id.* at ¶¶ 66-70. The relief that Bulk Transport sought in Count II—a stay of the statutory deadline to initiate arbitration, *see id.* at ¶¶ 71-74—is moot. On January 27, 2014, the parties executed a stipulation tolling the deadline to initiate arbitration under the Pension Fund's rules until ten days after the Court rules on Bulk Transport's preliminary-injunction motion. *See* R. 13. Count III is the mirror-image of the Pension Fund's own claim for declaratory relief concerning its decision to deny Bulk Transport's

administrative claim for a refund. *See* R. 8 ¶¶ 75-80. The refund issue is the subject of the Pension Fund's pending motion for summary judgment. *See* R. 25.

**LEGAL STANDARD**

In its response to Bulk Transport's preliminary-injunction motion, the Pension Fund moved to consolidate the preliminary-injunction hearing with a trial on the merits. *See* R. 20 at 11; *see also* Fed. R. Civ. P. 65(a)(2) (authorizing district courts to "advance the trial on the merits and consolidate it with the [preliminary injunction] hearing"). In that connection, the Pension Fund asks the Court to grant summary judgment in its favor pursuant to Rule 56(f). *See* R. 20 at 11; *see also* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant."). Bulk Transport agrees that its preliminary injunction motion should be consolidated with a trial on the merits, *see* R. 22 at 1, n.1, and asks the Court to enter a permanent injunction and/or a declaratory judgment barring the Pension Fund from imposing its arbitration rules. *Id.* at 16-18. The Court grants the parties' agreed motion to consolidate the preliminary-injunction proceedings with the ultimate merits of Bulk Transport's counterclaim. The relevant facts, drawn from the Pension Plan's answer to Bulk Transport's counterclaim (*see* R. 17), are undisputed. What remains are purely legal questions regarding the procedures governing the initiation and conduct of withdrawal-liability arbitration.

**I.     PBGC Regulations and Alternative Arbitration Procedures**

Congress created the Pension Benefit Guaranty Corporation ("PBGC") to carry out ERISA provisions governing plan termination insurance. *See* 29 U.S.C. §

1302. The statute requires parties to arbitrate withdrawal liability disputes "in accordance with fair and equitable procedures to be promulgated by the [PBGC]." *Id.* at § 1401(a)(1), (2). In 1983, the PBGC proposed rules governing the arbitration of withdrawal liability disputes, *see* 48 Fed. Reg. 31251-01, and later issued final rules effective September 26, 1985. *See* 50 Fed. Reg. 34679-01. The only requirement for initiating arbitration under the PBGC's regulations—in their original and current forms—is the receipt of notice by the non-initiating party. *See id.* at 34680; *see also* 29 C.F.R. § 4221.3 (current version imposing substantially the same requirement). The regulations further provide, however, that parties may use "an alternative arbitration procedure approved by the PBGC . . . [i]n lieu of the procedures prescribed by this part." 50 Fed. Reg. at 34686; *see also* 29 C.F.R. § 4221.14 (current version containing substantially the same language). Shortly before the PBGC's regulations became effective, the PBGC, "on its own initiative, determined that the Multiemployer Pension Plan Arbitration Rules effective June 1, 1981, sponsored by the International Foundation of Employee Benefit Plans ["IFEBP"] and administered by the American Arbitration Association ["AAA"] will be substantially fair to all parties involved in the arbitration of a withdrawal liability dispute and that the [AAA] is neutral and able to carry out its role under the procedures." *See* 50 Fed. Reg. 38046-03. The PBGC approved those rules, effective September 26, 1985, and stated that its approval would "remain effective until revoked by the PBGC through a Federal Register notice." *Id.* Section 7 of the

1981 version of the AAA's Multiemployer Pension Plan Arbitration Rules ("MPPAR") imposed the following requirements for initiating arbitration:

> Section 7. INITIATION OF ARBITRATION – Arbitration may be initiated in the following manner:
>
> (a) Under an arbitration provision in a plan document calling for arbitration under these Rules or by the AAA, the initiating party shall give notice to the other party of its intention to arbitration (Demand), which notice shall contain a statement setting forth a brief description of the dispute, the amount involved, if any, the remedy sought, and
>
> (b) By filing at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee as provided in the Administrative Fee Schedule.

*See* R. 22-1 at 4-5. The "Administrative Fee Schedule," in turn, imposed fees for initiating arbitration tied to the amount in dispute: (1) $500 (for disputes up to $1 million); (2) $850 (for disputes between $1 million and $3 million); and (3) $1,300 (for disputes between $3 million and $5 million). *Id.* at 9 ("Section 47. Administrative Fee Schedule").

On June 20, 1986, the PBGC published a notice in the Federal Register stating that the "sponsors of the AAA/IFEBP Multiemployer Arbitration Rules" had proposed to amend those rules, effective September 1, 1986, "in order to eliminate certain procedural differences from the rules in the PBGC's arbitration regulation and to reflect the AAA's five years' experience in administering multiemployer plan withdrawal liability arbitration." 51 Fed. Reg. 22585-01, 22586. The PBGC approved the rules as modified:

> This notice advises employers, plan sponsors of multiemployer pension plans and other interested parties that the PBGC has, at the request of the International Foundation and the AAA, reviewed the proposed

amendments and has determined that the revised rules will continue to satisfy the criteria for approval set forth in 29 CFR 2641.13(c). Accordingly, the PBGC hereby approves the AAA/IFEBP Multiemployer Pension Plan Arbitration Rules, as revised effective September 1, 1986. This approval is effective June 20, 1986 and will remain effective until revoked by the PBGC through a Federal Register notice.

*Id.* The 1986 MPPAR imposed substantially the same requirements for initiating arbitration as the 1981 version:

Section 7. INITIATION OF ARBITRATION

Arbitration under these Rules are initiated in the following manner:

(a) (i) The initiating party gives notice to the other party of its intention to arbitrate (Demand) which notice shall set forth a brief description of the dispute and shall include the amount involved, and (ii) files at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee as provided in the Administrative Fee Schedule.

R. 22-2 at 5. It did, however, increase the Administrative Fees: (1) $650 (for disputes up to $1 million); (2) $1,000 (for disputes between $1 million and $3 million); and (3) $1,450 (for disputes between $3 million and $5 million). *Id.* at 12 ("Administrative Fee Schedule").

The 1986 MPPAR—including the Administrative Fee Schedule—remained unchanged until the AAA issued a revised MPPAR effective February 1, 2013. *See* R. 22-3. The provisions of the 1986 and 2013 versions of the MPPAR are substantially similar, *see Central States v. Allega Concrete Corporation*, No. 13 C 6896, 2014 WL 2598816, *4 (N.D. Ill. June 10, 2014), except that the AAA has significantly increased its administrative fees. Whereas the 1986 MPPAR imposed a $650 Administrative Fee for all disputes under $1 million, the 2013 version contains

six "Initial Filing Fee" tiers below $1 million, starting at $750 for disputes between $0 and $10,000, up to $6,200 for disputes between $500,000 and $1 million. *See id.* at 13. The AAA also increased the fees at higher tiers, with an ultimate cap of $65,000. *See id.* The 2013 MPPAR also imposes a "Final Fee," tied to the amount in dispute, "payable in advance at the time that the first hearing is scheduled." *Id.* at 12-13.

Bulk Transport is bound by collective bargaining agreements to make contributions to the Pension Fund and to abide by the Pension Plan's terms. R. 8 ¶ 10; *see also* R. 27-8 at 3. With respect to the initiation of arbitration, the Pension Plan provides as follows:

> Manner of Initiation: Arbitration is initiated by written notice to the Chicago Regional Office of the American Arbitration Association ("AAA") with copies to the Fund (or if initiated by the Fund to the Employer) and the bargaining representative (if any) of the affected employees of the Employer. Such arbitration will be conducted, except as otherwise provided in these rules, in accordance with the "Multiemployer Pension Plan Arbitration Rules" (the "AAA Rules") administered by the AAA. The initial filing fee is to be paid by the party initiating the arbitration proceeding. Arbitration is timely initiated if received by the AAA along with the initial filing fee within the time period prescribed by ERISA Section 4221(a)(1).

R. 22-4 at 1 (Appendix E). The Pension Plan further provides that the venue for arbitration is Chicago, Illinois. *Id.* at 1-2 ("All arbitrations under this Section shall be conducted in Chicago, Illinois."). As far as the record reveals, Bulk Transport disputes the entire amount of the withdrawal liability that the Pension Fund has imposed for 2011 and 2012 ($324,473.93). Under the 2013 MPPAR, Bulk Transport must pay an Initial Filing Fee of $4,350, plus a Final Fee of $1,750 when the first

hearing is scheduled, versus the $650 it would have owed under the 1986 MPPAR. *See* R. 22-3 at 12-13.

## II. Whether the PBGC's Default Rules Govern the Initiation of Arbitration

Bulk Transport contends that the PBGC's default regulation governing the initiation of arbitration, 29 C.F.R. § 4221.3, supersedes the Pension Fund's alternative procedures. Applying that regulation, Bulk Transport may initiate arbitration with respect to its alleged withdrawal liability simply by sending notice to the Pension Fund without paying *any* fee. *See id.* Bulk Transport's claim is based upon essentially two theories. First, it argues that the PBGC improperly "approved" the 1981 and 1986 versions of the MPPAR without notice and comment. PBGC's "approval," according to Bulk Transport, was therefore ineffective, leaving § 4221.3 as the only properly "promulgated" procedure for initiating withdrawal-liability arbitration. *See* 29 U.S.C. § 1401(a). In the alternative, Bulk Transport argues that even if the PBGC had properly approved the 1986 MPPAR, it has not approved the AAA's 2013 amendment to the Administrative Fee Schedule. The 2013 MPPAR superseded the 1986 version, so the only extant PBGC-sanctioned procedure for initiating withdrawal-liability arbitration is § 4221.3. Bulk Transport seeks the following declaratory judgment:

i. The Pension Fund rule requiring employers to initiate arbitration in accordance with AAA Rules is unlawful;

ii. The Pension Fund rule requiring the use of the AAA for arbitrations is unlawful;

>   iii. The Pension Fund rule requiring the payment of initial filing fees by the employer is unlawful; and
>
>   iv. The Pension Fund rule requiring that venue of all arbitrations be in Chicago is unlawful.

R. 8 at 21.

After the parties fully briefed Bulk Transport's preliminary-injunction motion, the Seventh Circuit decided *Central States, Southeast and Southwest Areas Pension Fund v. Allega Concrete Corp.*, 722 F.3d 499 (7th Cir. 2014). The defendant in that case ("Allega") sent a letter to the Pension Fund demanding arbitration on July 9, 2013, a week before the expiration of the 60-day deadline to initiate arbitration. *Id.* at 500. On July 29, 2013—approximately two weeks *after* the deadline—Allega sent notice to the AAA. *Id.* The district court held that Allega's notice was untimely under the Pension Fund's rule requiring notice to *both* the Pension Fund *and* the AAA (together with the administrative fee) before the statutory deadline. *Id.* On appeal, Allega argued that its notice to the Pension Fund was timely and effective under § 4221.3, and that the Pension Fund's alternative procedure was not controlling because: (1) the AAA had not obtained PBGC approval for the 2013 amendment; and (2) the Fund's rules governing venue and attorneys' fees were contrary to both the PBGC's default procedures and the MPPAR. *Id.* at 501. The Seventh Circuit rejected Allega's argument that it was not required to send notice to the AAA:

> According to Allega, [the 2013 amendment and the differences between the Pension Fund's rules and the PBGC's regulations] relieve it of any obligation to serve the AAA with the demand for arbitration. But why? Let us suppose that both the AAA's higher fees and the differences

> between the Fund's rules and the AAA's required the PBGC's approval. (That may or may not be true; we need not decide. If it is true, then any conflict between the AAA's approved rules and the unilaterally adopted regulations of the Fund would be resolved in favor of the AAA's rules.) The fact remains that the PBGC did approve the AAA's rules in 1985 and 1986. It is the approved rules that call for the demand to be sent to the AAA (as well as the Fund) during the 60 days allowed by statute.

*Id.* The court further reasoned that Allega's failure to notify the AAA before the statutory deadline foreclosed any argument it might have made concerning the other provisions of the Pension Fund's rules governing arbitration:

> If Allega had sent a timely demand to the AAA, together with a check for $650, and the AAA had refused to proceed with arbitration, then we might have to decide whether an amendment of the fee schedule requires the PBGC's approval. But that's not what happened. And because Allega did not make a timely demand for arbitration, questions about venue and legal fees never arose. They could have been reviewed by the district court on a petition to review an arbitrator's final decision; any dispute about the AAA's fees could have been reviewed the same way. But Allega did not take the essential first step: a timely demand for arbitration sent to the AAA.

*Id.*

Applying *Allega* to this case, the Court concludes that Bulk Transport is not entitled to a declaration that the Pension Fund's rules governing the initiation of arbitration are unlawful. Even if the 2013 Administrative Fee Schedule does not apply, Bulk Transport must still comply with the 1986 version of the MPPAR. *See id.* So, in order to initiate arbitration, it must notify both the Pension Fund and the AAA, and pay an administrative fee,[2] before the statutory deadline. With respect to its request for a declaration that the Pension Fund's venue provision is unlawful,

---

[2] How much Bulk Transport must pay is a separate issue. *See infra.*

*Allega* suggests that this is a matter for the arbitrator to decide in the first instance. *See id.* at 501 ("[B]ecause Allega did not make a timely demand for arbitration, questions about venue and legal fees never arose. They could have been reviewed by the district court on a petition to review an arbitrator's final decision; any dispute about the AAA's fees could have been reviewed in the same way."). This is consistent with the Seventh Circuit's decision in *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899 (7th Cir. 1988), which held that judicial oversight over the procedures governing the initiation of arbitration is an "exception" to MPPAA's mandatory arbitration requirement:

> Chipman's strongest argument derives not from particular decisions under the MPPAA, but from the strong overall policy of the MPPAA mandating arbitration. "Congress' directive [regarding the MPPAA] is clear. *Any* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated." *I.A.M. Nat. Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 417 (D.C. Cir. 1987)] (emphasis in original); *see also Teamsters Pension Trust Fund v. Allyn Transportation Co.*, 832 F.2d 502, 504 (9th Cir.1987). Chipman correctly argues that letting the district court, rather than the arbitrator, determine the timeliness of Chipman's arbitration request creates an exception to the strong policy in favor of arbitrating first, but Chipman incorrectly concludes that such an exception violates the policy. Ironically, allowing this exception preserves arbitration as a strong remedy. As Judge Grady noted in his July 2, 1987, opinion, if the question of whether arbitration was waived remained a question for the arbitrator, the time limits in the statute would be toothless; employers could ignore the 120–day statutory limit for initiating arbitration and then move to dismiss the pension fund's subsequent collection suit, claiming that the matter had to return to the arbitrator for a determination of whether the failure to file constituted a waiver. Our decision allows the statutory time limit to retain its bite. The concern of the MPPAA to provide an expeditious remedy is a limitation on the statute's preference for arbitral decision-making.

*Id.* at 902. The location of arbitration is distinct from the conditions necessary to initiate arbitration before the statutory deadline expires.

In response to the Pension Fund's motion citing *Allega* as supplemental authority, Bulk Transport makes two arguments: (1) *Allega* was incorrectly decided, (*see* R. 78 ¶ 1 ("*Allega* erroneously assumed that if the 2013 rules were not approved by the PBGC, the party would still have to comply with the superseded 1986 version"); and (2) the defendant in that case did not raise, and the Seventh Circuit did not decide, whether the PBGC exceeded its authority by approving the 1986 MPPAR without notice and comment, (*id.* at ¶ 7). The first argument is a nonstarter, and the second argument fares only a little better. Bulk Transport contends that the term "promulgated" in 29 U.S.C. § 1401(a)(2) is a term of art requiring the PBGC to employ the Administrative Procedure Act's ("APA") "notice and comment" rule-making procedure. *See* R. 22 at 17. Instead, the PBGC approved the MPPAR on "its own initiative" and without inviting comment. The PBGC approved the MPPAR almost 30 years ago. As far as the Court can tell, no court has ever held that the PBGC exceeded its authority in doing so. Bulk Transport is correct that the Seventh Circuit did not expressly address this argument in *Allega*, but the court did deny Bulk Transport's motion for leave to file an amicus curiae brief raising this very issue. *See Central States, Southeast and Southwest Areas Pension Fund v. Allega Concrete Corp.*, No. 14-2512, R. 12-13 (7th Cir. 2014). The Seventh Circuit was aware of Bulk Transport's APA argument, but nevertheless held that notice delivered to the Pension Fund before the statutory deadline was

insufficient in light of the Pension Fund's adoption of PBGC-approved AAA procedures. Finally, as Bulk Transport itself points out (*see* R. 22 at 13), the regulation pursuant to which the PBGC approved the 1981 and 1986 versions of the MPPAR, 29 C.F.R. § 4221.14, was published as a proposed rule in the Federal Register and finalized after a lengthy comment period. The regulation establishes general criteria required for PBGC approval, *see id.* at § 4221.14(d), and sets limits on the scope of any alternative procedure so approved. *See id.* at § 4221.14(b). For example, the alternative procedures may not alter the time limits for initiating arbitration, must allow for prehearing discovery, and must allocate costs in accordance with 29 C.F.R. § 4221.10. These mandatory provisions are "fair and equitable," and they were "promulgated" by the PBGC as Bulk Transport construes that term. *See* 29 U.S.C. § 1401. At the same time, the PBGC's regulations allow interested parties to propose alternative procedures governing *other* aspects of arbitration, subject to the PBGC's approval. The Court is not persuaded that this framework, adopted after notice and comment, runs afoul of the APA. In any event, as the Court already noted, Bulk Transport has not cited any case (controlling or otherwise) holding that the PBGC's approval of the MPPAR was improper.

In sum, the Court concludes that *Allega* forecloses the relief that Bulk Transport seeks in paragraphs i, ii, and iii of its request for declaratory relief. *See* R. 8 at 21. With respect to paragraph iv, which seeks a declaration that the Pension Fund's venue provision is unlawful (*see id.*), the Court concludes that this issue must be decided by the arbitrator in the first instance. For the same reasons, the

Court concludes that Bulk Transport is not entitled to a permanent injunction enjoining the Pension Fund from enforcing its rules.

## III. The Legal Status of the 2013 MPPAR

The *Allega* court did not reach the question of whether the AAA can, without obtaining the PBGC's approval, require a party initiating arbitration to pay the 2013 MPPAR's increased administrative fees. 772 F.3d at 501. In this case, the issue is—at least potentially—still alive because the parties have agreed to toll the 60-day deadline to initiate arbitration. But Bulk Transport's counterclaim does not seek a declaration that it only has to pay $650 to initiate arbitration. And in its response to the Pension Fund's motion citing *Allega*, Bulk Transport did not request that relief in the alternative to the relief it seeks in its counterclaim. *Allega* indicates that the initiating party *may* challenge the enforceability of the amended Administrative Fee Schedule in arbitration. *See Allega*, 772 F.3d at 501 ("[A]ny dispute about the AAA's fees could have been reviewed . . . by the district court on a petition to review the arbitrator's final decision."). But other language in the opinion suggests that the initiating party is not *required* to do so. *See id.* ("If Allega had sent a timely demand to the AAA, together with a check for $650, and the AAA had refused to proceed with arbitration, then *we* might have to decide whether an amendment of the fee schedule requires the PBGC's approval. But that's not what happened.") (emphasis added). Given the relief that Bulk Transport has requested in its counterclaim, however, the Court will not address the issue at this time.

## CONCLUSION

For the foregoing reasons, the Court denies Bulk Transport's motion for a preliminary injunction, R. 10. The Court sets a status hearing for June 4, 2015 at 9:00 a.m. to determine whether Bulk Transport intends to seek an order declaring that the 1986 version of the MPPAR governs arbitration between the parties. If it does not seek such an order, the Court will enter judgment in the Pension Fund's favor on Count I of Bulk Transport's counterclaim. If it does seek such an order, the Court will give the parties an opportunity to brief the issue further and/or set a date for oral argument. On its own motion, the Court continues to stay the 60-day deadline to initiate arbitration pending further order of court.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: May 19, 2015