UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND AND ARTHUR H. BUNTE, JR. | ) ) ) ) | |
| PLAINTIFFS, | ) ) | No. 13 C 9112 |
| v. | ) ) | Judge Thomas M. Durkin |
| BULK TRANSPORT, CORP., | ) ) | |
| DEFENDANT. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

The parties in this case—counter-plaintiff Bulk Transport Corporation and counter-defendants Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, one of the Fund's trustees (collectively, the "Pension Fund")—dispute whether the Pension Fund may require Bulk Transport to comply with the American Arbitration Association's ("AAA") current rules governing the initiation of withdrawal-liability arbitration. For the following reasons, the Court concludes that the Pension Fund may not require Bulk Transport to comply with the AAA's current rules and directs the parties to comply with the Pension Benefit Guaranty Corporation's ("PBGC") default rules.

**BACKGROUND**

**I.      Regulatory Background**

The Pension Fund is a multiemployer pension plan under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer

1

Pension Plan Amendment Act ("MPPAA"). *See* R. 17 ¶ 1; *see also* 29 U.S.C. §§ 1002(37) and 1301(a)(3). The MPPAA imposes "withdrawal liability" on employers who withdraw, partially or completely, from an underfunded multiemployer pension fund. *See* 29 U.S.C. §§ 1381-1405. After receiving notification from the plan sponsor demanding payment of withdrawal liability, an employer has 90 days to ask the plan sponsor to review the decision. *See* 29 U.S.C. § 1399(b)(2)(A). "After a reasonable review of any matter raised," the plan sponsor must notify the employer of its decision and the basis for it. *See id.* at § 1399(b)(2)(B). The employer then has 60 days to initiate mandatory arbitration. *See id.* at § 1401(a)(1)(A). If the employer does not initiate arbitration within that time period, the withdrawal liability demanded by the plan sponsor becomes "due and owing." *See id.* at § 1401(b)(2).

The PBGC has adopted default rules implementing the MPPAA's mandatory arbitration requirement. Under those rules, an employer initiates withdrawal-liability arbitration simply by notifying the Pension Fund that it wishes to arbitrate the parties' withdrawal-liability dispute:

> If the employer initiates arbitration, it shall include in the notice of initiation a statement that it disputes the plan sponsor's determination of its withdrawal liability and is initiating arbitration. A copy of the demand for withdrawal liability and any request for reconsideration, and the response thereto, shall be attached to the notice. If a party other than an employer initiates arbitration, it shall include in the notice a statement that it is initiating arbitration and a brief description of the questions on which arbitration is sought. If arbitration is initiated by agreement, the agreement shall include a brief description of the questions submitted to arbitration. In no case is compliance with formal rules of pleading required.

29 C.F.R. § 4221.3. The regulations go on to establish rules governing the arbitrator's appointment and other arbitration procedures. *Id*. §§ 4221.4–21.13.

The PBGC's rules further provide, however, that parties may use "an alternative arbitration procedure approved by the PBGC . . . [i]n lieu of the procedures prescribed by this part." *Id*. § 4221.14. The PBGC "may approve arbitration procedures on its own initiative by publishing an appropriate notice in the Federal Register." *Id*. § 4221.14(c). Or the sponsor of an arbitration procedure may request PBGC approval by submitting an application:

> The PBGC shall approve an application if it determines that the proposed procedures will be substantially fair to all parties involved in the arbitration of a withdrawal liability dispute and that the sponsoring organization is neutral and able to carry out its role under the procedures. The PBGC may request comments on the application by publishing an appropriate notice in the Federal Register. Notice of the PBGC's decision on the application shall be published in the Federal Register. Unless the notice of approval specifies otherwise, approval will remain effective until revoked by the PBGC through a Federal Register notice.

*Id*. § 4221.14(d).

In 1985, the PBGC, "on its own initiative, determined that the Multiemployer Pension Plan Arbitration Rules effective June 1, 1981, sponsored by the International Foundation of Employee Benefit Plans ["IFEBP"] and administered by the American Arbitration Association ["AAA"] will be substantially fair to all parties involved in the arbitration of a withdrawal liability dispute and that the [AAA] is neutral and able to carry out its role under the procedures." *See* 50 Fed. Reg. 38046-03. The PBGC's approval became effective September 26, 1985, and would remain so "until revoked by the PBGC through a Federal Register notice." *Id.* Section 7 of

3

the 1981 version of the AAA's Multiemployer Pension Plan Arbitration Rules ("MPPAR") imposed the following requirements for initiating arbitration:

> Section 7. INITIATION OF ARBITRATION – Arbitration may be initiated in the following manner:
>
> (a) Under an arbitration provision in a plan document calling for arbitration under these Rules or by the AAA, the initiating party shall give notice to the other party of its intention to arbitration (Demand), which notice shall contain a statement setting forth a brief description of the dispute, the amount involved, if any, the remedy sought, and
>
> (b) By filing at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee as provided in the Administrative Fee Schedule.

*See* R. 22-1 at 4-5. The "Administrative Fee Schedule," in turn, imposed fees for initiating arbitration tied to the amount in dispute: (1) $500 (for disputes up to $1 million); (2) $850 (for disputes between $1 million and $3 million); and (3) $1,300 (for disputes between $3 million and $5 million). *Id.* at 9 ("Section 47. Administrative Fee Schedule").

On June 20, 1986, the PBGC published a notice in the Federal Register stating that the "sponsors of the AAA/IFEBP Multiemployer Arbitration Rules" had proposed to amend those rules, effective September 1, 1986, "in order to eliminate certain procedural differences from the rules in the PBGC's arbitration regulation and to reflect the AAA's five years' experience in administering multiemployer plan withdrawal liability arbitration." 51 Fed. Reg. 22585-01, 22586. The PBGC approved the rules as modified:

> This notice advises employers, plan sponsors of multiemployer pension plans and other interested parties that the PBGC has, at the request of the International Foundation and the AAA, reviewed the proposed

4

amendments and has determined that the revised rules will continue to satisfy the criteria for approval set forth in 29 CFR 2641.13(c). Accordingly, the PBGC hereby approves the AAA/IFEBP Multiemployer Pension Plan Arbitration Rules, as revised effective September 1, 1986. This approval is effective June 20, 1986 and will remain effective until revoked by the PBGC through a Federal Register notice.

*Id.* The 1986 MPPAR imposed substantially the same requirements for initiating arbitration as the 1981 version:

Section 7. INITIATION OF ARBITRATION

Arbitration under these Rules are initiated in the following manner:

(a) (i) The initiating party gives notice to the other party of its intention to arbitrate (Demand) which notice shall set forth a brief description of the dispute and shall include the amount involved, and (ii) files at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee as provided in the Administrative Fee Schedule.

R. 22-2 at 5. It did, however, increase the Administrative Fees: (1) $650 (for disputes up to $1 million); (2) $1,000 (for disputes between $1 million and $3 million); and (3) $1,450 (for disputes between $3 million and $5 million). *Id.* at 12 ("Administrative Fee Schedule").

The 1986 MPPAR—including the Administrative Fee Schedule—remained unchanged until the AAA issued a revised MPPAR effective February 1, 2013. *See* R. 22-3. The provisions of the 1986 and 2013 versions of the MPPAR are substantially similar, *see Central States v. Allega Concrete Corporation*, No. 13 C 6896, 2014 WL 2598816, *4 (N.D. Ill. June 10, 2014), except that the AAA has restructured and significantly increased its administrative fees. Whereas the 1986 MPPAR imposed a $650 Administrative Fee for all disputes under $1 million, the

5

2013 version contains six "Initial Filing Fee" tiers below $1 million, starting at $750 for disputes between $0 and $10,000, up to $6,200 for disputes between $500,000 and $1 million. *See id.* at 13. The AAA also increased the fees at higher tiers, with an ultimate cap of $65,000. *See id.* The 2013 MPPAR also imposes a "Final Fee," tied to the amount in dispute, "payable in advance at the time that the first hearing is scheduled." *Id.* at 12-13.

## II.    Procedural Background in This Case

On May 17, 2013, Bulk Transport received from the Pension Fund a demand for: (1) $86,687.75 for an alleged partial withdrawal during plan year 2011; and (2) $237,768.18 for an alleged complete withdrawal during plan year 2012. *See* R. 17 ¶¶ 14-15. On or about August 13, 2013, Bulk Transport submitted a timely request for review to the Pension Fund. *See id.* ¶¶ 16-17. On or about December 6, 2013, the Pension Fund rejected Bulk Transport's challenge with respect to both plan years. *See id.* ¶¶ 18-19.

On December 20, 2013, the Pension Fund filed this lawsuit seeking a declaratory judgment that Bulk Transport is not entitled to a refund with respect to certain pension contributions. R. 1. Bulk Transport filed a counterclaim against the Pension Fund within the 60-day period to initiate arbitration. *See* R. 8. Among other relief, Bulk Transport sought declaratory and injunctive relief prohibiting the Pension Fund from enforcing its rules governing arbitration. *Id.* ¶¶ 66-70. On January 27, 2014, the parties executed a stipulation tolling the deadline to initiate

6

arbitration under the Pension Fund's rules until ten days after the Court ruled on Bulk Transport's preliminary-injunction motion. *See* R. 13.

With respect to the initiation of arbitration, the Pension Plan provides as follows:

> Manner of Initiation: Arbitration is initiated by written notice to the Chicago Regional Office of the American Arbitration Association ("AAA") with copies to the Fund (or if initiated by the Fund to the Employer) and the bargaining representative (if any) of the affected employees of the Employer. Such arbitration will be conducted, except as otherwise provided in these rules, in accordance with the "Multiemployer Pension Plan Arbitration Rules" (the "AAA Rules") administered by the AAA. The initial filing fee is to be paid by the party initiating the arbitration proceeding. Arbitration is timely initiated if received by the AAA along with the initial filing fee within the time period prescribed by ERISA Section 4221(a)(1).

R. 22-4 at 1 (Appendix E). The parties dispute whether Pension Fund may require Bulk Transport to pay the "initial filing fee" that the 2013 MPPAA imposes. Under the 2013 MPPAR, Bulk Transport must pay an Initial Filing Fee of $4,350, plus a Final Fee of $1,750 when the first hearing is scheduled, versus the $650 it would have owed under the 1986 MPPAR. *See* R. 22-3 at 12-13.

In its motion for a preliminary injunction, Bulk Transport argued that the 2013 MPPAR—which the PBGC has not approved to date—superseded the 1986 MPPAR. Thus, according to Bulk Transport, the *only* PBGC-sanctioned arbitration procedures are the default regulations (29 C.F.R. §§ 4221.3–21.13). The Court rejected Bulk Transport's argument in light of the Seventh Circuit's decision in *Central States, Southeast and Southwest Areas Pension Fund v. Allega Concrete*

*Corp.*, which held that parties subject to collective bargaining agreements utilizing alternative arbitration procedures must still comply with the 1986 MPPAR:

> According to Allega, [the 2013 amendment and the differences between the Pension Fund's rules and the PBGC's regulations] relieve it of any obligation to serve the AAA with the demand for arbitration. But why? Let us suppose that both the AAA's higher fees and the differences between the Fund's rules and the AAA's required the PBGC's approval. (That may or may not be true; we need not decide. If it is true, then any conflict between the AAA's approved rules and the unilaterally adopted regulations of the Fund would be resolved in favor of the AAA's rules.) The fact remains that the PBGC did approve the AAA's rules in 1985 and 1986. It is the approved rules that call for the demand to be sent to the AAA (as well as the Fund) during the 60 days allowed by statute.

722 F.3d 499, 501 (7th Cir. 2014). As the quotation cited above indicates, the Seventh Circuit did not decide whether the 2013 MPPAR requires the PBGC's approval. Nor was that issue before the Court on Bulk Transport's original preliminary-injunction motion in light of the relief that it sought. *See* R. 79 at 15.

After the Court denied the preliminary-injunction motion, Bulk Transport amended its counterclaim to request a declaration that the Pension Fund cannot require it comply with the 2013 MPPAR. R. 82-1 2 at (B)(vi.-viii). After oral argument on June 11, 2015, the Court provisionally held that the Pension Fund could not require Bulk Transport to pay the 2013 MPPAR's rates to initiate arbitration. *See* R. 90 at 44-45 (Trans. of Proceedings dated June 11, 2015). To bring the issue to a head, the Court directed Bulk Transport to tender $650 to the AAA to initiate arbitration consistent with the 1986 MPPAR. *Id*. at 46. Bulk Transport has informed the Court that it tendered the $650 payment to the AAA and that the AAA responded that the filing fee was "not in accordance with" its 2013 Fee Schedule.

8

After Bulk Transport requested clarification, the AAA stated that it was "dealing with the PBGC" and would be in touch.

Pursuant to the MPPAA's "pay now, dispute later" scheme, *see Central States, Southeast and Southwest Areas Pension Fund v. Bomar*, 253 F.3d 1011, 1019 (7th Cir. 2001), Bulk Transport has already paid the Pension Fund the full amount of the disputed withdrawal liability. The only way that it can claw back that money is through arbitration, and the AAA's response leaves the company in limbo. The Court concludes that it must now decide whether Bulk Transport has properly initiated arbitration and what procedures shall govern arbitration between the parties going forward.

## ANALYSIS

### I. Bulk Transport Has Properly Initiated Arbitration

The fee to initiate arbitration is a substantive component of the MPPAR. The higher the fee, the more likely it is that employers will be dissuaded from asserting their statutory right to challenge withdrawal liability. At the same time, the entities that offer arbitration services are entitled to compensation for those services. Striking a fair balance between the two interests is a policy decision that the MPPAA leaves to the PBGC. *See* 29 C.F.R. § 4221.14 ("The PBGC shall approve an application if it determines that the proposed procedures will be *substantially fair* to all parties involved in the arbitration of a withdrawal liability dispute . . . .") (emphasis added). The AAA imposed one price increase in the time between the PBGC's approval of the 1981 MPPAR and the AAA's adoption of the 2013 MPPAR.

9

In that case—the 1986 MPPAR—the AAA sought and received the PBGC's approval. It has not approved the 2013 MPPAR, and until it does, the Pension Fund may not require Bulk Transport to pay the AAA's current rates to initiate arbitration.

The Court rejects the Pension Fund's argument that the PBGC implicitly authorized the AAA to amend the fee schedule as it sees fit. The 1986 MPPAR indicated that the AAA might amend its fee schedules in the future:

> As a nonprofit organization, the AAA shall prescribe an Administrative Fee Schedule, a Refund Schedule and a Schedule of Other Service Charges to compensate it for the cost of providing administrative services. *The schedule in effect at the time of filing, refunding or service shall be applicable.*

R. 22-2 at 12 ("Administrative Fees") (emphasis added). The court in *Divane v. Paldo Sign and Display Company* concluded that this language indicated that the PBGC allowed the AAA to set its fee without requiring further express approval. No. 14 C 636, 2015 WL 5062781, at *5 (N.D. Ill. Aug. 26, 2015). It is true, as the *Divane* court points out, that the 1986 MPPAR "does not state that each schedule in effect at the time of filing must be individually approved by the PBGC and published in the Federal Register." *Id*. But one would not expect it to. The approval requirement appears in the regulations implementing the MPPAA, not in the AAA's rules. Pursuant to those regulations, the PBGC must conclude that alternative rules are substantially fair. It determined that the 1986 MPPAR was fair, including the fee schedule that it imposed. It may conclude that the 2013 MPPAR is fair, but it has not done so yet.

The Court finds that Bulk Transport has initiated arbitration for purposes of the 29 U.S.C. § 1401 by complying with the 1986 MPPAR.

II. **The Parties Are Directed to Comply with the PBGC's Default Procedures**

The Court's finding that Bulk Transport has properly initiated arbitration is cold comfort if the AAA refuses to accept its $650 payment and the Pension Fund insists that the parties utilize the AAA. The Court understands from the parties' representations that the AAA has not completely ruled out the possibility that it *will* accept the $650 payment. But the Court is unwilling to delay the matter any further pending open-ended discussions between two parties (the AAA and the PBGC) that are not before the Court. Thus, the Court directs the parties to arbitrate their dispute pursuant to the PBGC's default rules. *See* 29 C.F.R. §§ 4221.3–21.13.

## CONCLUSION

For the foregoing reasons, the Court concludes that Bulk Transport has properly initiated arbitration under 29 U.S.C. § 1401. The Court directs the parties to arbitrate their dispute pursuant to the PBGC's default rules. The parties shall submit to the Court a proposed order consistent with this opinion, agreed with respect to form, before 12:00 p.m. on October 2, 2015.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: September 28, 2015